UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS


CIVIL ACTION NO. 10-12076-RWZ


In re NOVELL, INC. SHAREHOLDER LITIGATION


ORDER

February 10, 2012

ZOBEL, D.J.

Michael Rosenberg, Mohan Desai, Robert G. Ciancetti, Leslie Jacobs, and

Bruce M. Scotland (collectively, "plaintiffs") bring this class action as former

shareholders of Novell, Inc., against individual defendants who are all former directors

of Novell ("Novell Directors"),[1] and defendant Attachmate Corporation for conduct

arising out of Novell's merger with Attachmate in 2011.[2]  Plaintiffs' Consolidated

Complaint[3] contains three counts: Count I - breach of fiduciary duty against the Novell

Directors, and aiding and abetting breach of fiduciary duty against Attachmate; Count II

- violation of section 14(a) of the Securities Exchange Act of 1934 ("§ 14(a)" and "the

1934 Act," respectively) and Rule 14a-9 against all defendants; and, Count III -

---

[1] Ronald Hovsepian, Albert Aiello, Jr., Fred Corrado, Richard Crandall, Richard L. Nolan, John W. Poduska, Sr., Patrick S. Jones, Gary Greenfield, and Judith Hamilton.

[2] Novell, Inc., and Longview Software Acquisition Corp. (a wholly-owned subsidiary of Attachmate) are listed as defendants in one of the original complaints and the joint motion to consolidate. The Consolidated Complaint, however, does not include these defendants as parties; I therefore assume that they are no longer defendants in this case.

[3] Plaintiffs Desai and Rosenberg each filed suit in this matter on December 1 and December 29, 2010, respectively.  I consolidated the two actions on March 23, 2011 and appointed lead plaintiffs and lead counsel on April 27, 2011.  The lead plaintiffs filed their Consolidated Complaint on June 15, 2011.

violation of section 20(a) of the 1934 Act ("§ 20(a)") against all defendants.[4]

Defendants move to dismiss all claims against them for failure to state a claim, Docket ## 46, 51, or in the alternative, to stay proceedings pending the outcome of a class action lawsuit in the Delaware Court of Chancery, In re Novell, Inc. Shareholders Litigation, Consolidated C.A. No. 6032-VCN (the "state action" or "Delaware action").[5] Docket ## 49, 58. For the reasons enumerated below, Attachmate's motion to dismiss is allowed, as is the Novell Directors' motion for a stay of these proceedings pending further order of this court.

## I. Background

For purposes of this Order, I consider as true the facts as alleged in the Consolidated Complaint. I also consider documents incorporated by reference therein,

---

[4] Although the Consolidated Complaint contains language suggesting that plaintiffs are only seeking class relief for Count I, at oral argument they indicated that this language is a "typo" and they are seeking class relief for all claims. While plaintiffs have yet to correct their filings, I proceed on this assumption.

[5] The Delaware action is a consolidated shareholder class action suit filed on behalf of all former Novell shareholders, including plaintiffs in this action, challenging the Novell/Attachmate merger. Shortly after Novell and Attachmate announced the proposed merger, fourteen Novell shareholders brought suit in the Delaware Court of Chancery. The Chancery Court consolidated these actions on December 20, 2010. The Delaware plaintiffs filed a Consolidated Amended Verified Class Action Complaint on January 6, 2011.

Co-lead plaintiffs in the Delaware action are the Oklahoma Firefighters Pension and Retirement System, Louisiana Municipal Police Employees' Retirement System, Operating Engineers Construction Industry and Miscellaneous Pension Fund, and Robert Norman. Defendants in this action are also defendants in the Delaware action. Their co-defendants in the Delaware action are Novell, Inc., Longview Software Acquisition Corp., Microsoft, CPTN (a consortium of technology companies organized by Microsoft), and Elliott Associates L.P.

The Delaware complaint contains two counts. Count I is for breach of fiduciary duty against the Novell Directors by: (a) failing to properly disclose all material facts concerning the proposed transaction and filing a "false and misleading" proxy statement; (b) agreeing to the patent purchase agreement without trying to maximize shareholder value in connection with the patent sale; (c) failing to maximize shareholder value through an "improper and opaque sales process"; and (d) providing disparate consideration to public shareholders in connection with the sale. Count II is for aiding and abetting a breach of fiduciary duty against Attachmate, Elliot, Microsoft, CPTN, and "MergerSub."

matters susceptible to judicial notice, and matters of public record, including state court records. <u>Giragosian v. Ryan</u>, 547 F.3d 59, 65-66 (1st Cir. 2008).

**A. The Sale Process and Merger Agreement**

Novell is a Delaware software company headquartered in Waltham, Massachusetts. On March 2, 2010, Novell's Board of Directors ("the Board") received an unsolicited bid from one of Novell's associated shareholders, Elliott Associates, L.P., and Elliott International L.P. (collectively, "Elliott"), proposing a purchase price of $5.75 per share. Later that month, the Board issued a press release announcing rejection of Elliott's bid as inadequate. From March through November 2010, the Board solicited and evaluated purchasers for Novell ("the sale process"). During the sale process, eight potential buyers, including Attachmate, proposed price ranges from $5.50 to $7.50 per share. Novell's financial advisor, J.P. Morgan, also contacted and evaluated 52 potential buyers, reviewed strategic alternatives, and provided the Novell Directors with a fairness opinion of Attachmate's proposal.

On November 22, 2010, Novell announced that it had entered into a merger agreement with Attachmate. On December 14, 2010, Novell issued a proxy statement ("the Preliminary Proxy") explaining the sale process, disclosing the terms of the merger agreement, and recommending that Novell shareholders vote in favor of the merger. Novell subsequently amended the Preliminary Proxy on December 27, 2010, and again on January 14, 2011 ("the Definitive Proxy"). On February 3, 2011, Novell filed a supplement to the Definitive Proxy, making additional disclosures.

Approximately 99 percent of shares voting approved the merger on February 17, 2011.

## B. Financing and Terms of the Merger Agreement

Attachmate agreed to purchase Novell for $6.10 per share, a transaction valued at approximately $2.2 billion. The purchase was contingent on the separate but concurrent sale of a number of Novell's patents to CPTN, a consortium of technology companies organized by Microsoft Corporation, for $450 million ("the patent purchase agreement"). Certain members of Novell's Board and management stood to gain financially from the merger, in the form of vested stock options and "lucrative cash payments" if their employment was terminated after the acquisition. Docket # 45 ¶¶ 57-58.

Novell agreed to discontinue any discussions with all other potential acquirers and not to enter into new discussions ("No Shop" provision); to give Attachmate five days to match any competing proposals ("Matching Rights" provision); and to pay Attachmate a $60 million termination fee in the event that Novell received and accepted a better offer ("Termination Fee" provision). Attachmate agreed to pay Novell a $120 million termination fee ("reverse termination fee") in the event that Attachmate failed to consummate the merger.

Elliott and Attachmate entered into a separate agreement whereby Elliott pledged equity to support Attachmate's purchase of Novell in the form of Elliott's 7.1% ownership in Novell common stock. In return, Elliott would become an equity shareholder in Wizard Parent, Attachmate's parent corporation. Francisco Partners, one of Attachmate's principal shareholders, also provided equity to finance Attachmate's purchase of Novell.

## C. Greenfield

Gary Greenfield, one of the Novell Directors, was once an operating partner of Francisco Partners, and since 2003 has been CEO of GXS, Inc., a subsidiary of Francisco Partners. During the sale process, Greenfield also had a "continuing passive interest in certain of Francisco Partners' investment funds," although, in September 2010, he "did not have definitive information as to which fund or funds of Francisco Partners might be used to finance [the proposed merger with Attachmate]." Docket # 52 Ex. A at 38. On September 21, 2010, the Board determined, with Greenfield abstaining, that his "continued participation in the [sale] process would be beneficial and enhance [the Board's ability] to consider and pursue [Novell's and its stockholders'] best interest." Id. The Board also "ratified" Greenfield's "prior participation as a member of the Board in deliberations and decisions relative to the process." Id. On or about October 21, 2010, at the request of Novell Director Crandall, Greenfield contacted Francisco Partners to ask that Attachmate reconsider a transaction for the purchase of Novell.

On November 21, 2010, the Board, with Greenfield abstaining, voted to approve the Attachmate merger and resolved to recommend that Novell shareholders do likewise. Subsequent to the announcement of the merger, Greenfield "advised Novell that he had received notice that certain funds of Francisco Partners in which he was a passive investor would be participating in the acquisition of Novell." Id. at 76-77. Francisco Partners "agreed to waive Greenfield's commitment to co-invest to fund the acquisition of Novell." Id. at 77.

## II. Attachmate's Motion to Dismiss

A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009) (internal quotation marks omitted). The facts pleaded must allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. <u>Id.</u> The court will identify and disregard any statements in the complaint that are either "legal conclusions couched as facts or bare bones recitals of the elements of action." <u>Harron v. Town of Franklin</u>, 660 F.3d 531, 535 (1st Cir. 2011)(citing <u>Iqbal</u>, 129 S.Ct. at 1949-50, and <u>Ocasio–Hernández v. Fortuño–Burset</u>, 640 F.3d 1, 12 (1st Cir.2011)).

### A. Aiding and Abetting Claims Against Attachmate

Plaintiffs allege that the Novell Directors breached their fiduciary duties of care and loyalty by failing to maximize shareholder value of Novell through the sale process. They allege that Attachmate aided and abetted such breach by the Novell Directors. To survive Attachmate's motion to dismiss, the complaint must allege facts that satisfy the four elements of an aiding and abetting claim: (1) the existence of a fiduciary relationship; (2) a breach of the fiduciary's duty; (3) knowing participation in that breach by the defendants; and (4) damages proximately caused by the breach. <u>Malpiede v. Townson</u>, 780 A.2d 1075, 1096 (Del. 2001)(internal quotations omitted).

"A third party may be liable for aiding and abetting a breach of a corporate fiduciary's duty to the stockholders if the third party 'knowingly participates' in the

breach." Id. "Knowing participation in a board's fiduciary breach requires that the third party act with the knowledge that the conduct advocated or assisted constitutes such a breach." Id. at 1097 (citing Assoc. Imports v. ASG Indus., Inc., 1984 WL 19833, at * 12 (Del. Ch. June 20, 2984)("[K]nowledge and intentional complicity therein by [the third party] of the breach by [the fiduciary] are essential."), aff'd sub nom. Hubbard v. Assoc. Imports, Inc., 497 A.2d 787 (Del. 1985)). "Similarly, a bidder may be liable to a target's stockholders for aiding and abetting a fiduciary breach by the target's board where the bidder and the board conspire in or agree to the fiduciary breach." Id. at 1097-98 (emphasis added).

Only two allegations implicate conduct by Attachmate and are therefore relevant to the claim against it. First, plaintiffs claim that the Novell Directors permitted defendant Greenfield to negotiate with Attachmate on Novell's behalf despite knowing of his affiliation with Francisco Partners. Second, they allege that the Novell Directors "allowed" Elliott to finance the acquisition by exchanging Novell common stock for rollover shares in Attachmate's parent company, Wizard Parent LLC, thereby securing for Elliott a "material financial benefit" not shared by Novell's other public shareholders. Docket # 45 ¶¶ 8, 54. Plaintiffs argue that Attachmate "knowingly participated" in the Novell Directors' alleged breach because Attachmate "knew" of Greenfield's affiliation with Francisco Partners and "knew" that Elliott was receiving rollover shares in Wizard Parent. Neither argument establishes that Attachmate "knowingly participated" in a breach of fiduciary duty by the Novell Directors.

### 1. Greenfield and Conflict of Interest

The allegation that Greenfield was a "conflicted" director on its own does not satisfy the "knowing participation" requirement because plaintiffs fail to allege that Greenfield dominated or controlled Novell's Board. See Malpiede, 780 A.2d at 1084, 1098 (noting that "the amended complaint does not allege that the lone conflicted director dominated the three other directors who approved the merger;" affirming dismissal of aiding and abetting claim for lack of "knowing participation" where, among other things, "there is no dispute that only one of the [target company's] directors who approved the merger had a conflict of interest, and that director did not dominate or control the others").

Plaintiffs attempt to compare this case to Gilbert v. El Paso Co., 490 A.2d 1050, 1057-58 (Del. Ch. 1984), in which the court denied summary judgment for the defendant bidding company on a civil conspiracy claim[6] because the bidder extracted a "valuable concession," the terms of which clearly benefitted only the target company's management and not its shareholders. Unlike the defendant in Gilbert, Attachmate is not alleged to have offered the Novell Directors any benefit at the expense of Novell's shareholders.

The complaint alleges that Greenfield discussed the transaction with Attachmate and that Attachmate entered into a financing arrangement with Elliott.  These allegations do not fairly permit the inference that Attachmate actually facilitated a breach by the Novell Directors or conspired to do so. See Malpiede, 780 A.2d at 1098

---

[6] The elements of the civil conspiracy claim at issue in Gilbert are identical to those for aiding and abetting a breach of fiduciary duty.  490 A.2d at 1057.

(affirming dismissal of aiding and abetting claim where there was "no indication in the amended complaint that [the bidder] participated in the board's decisions, conspired with board, or otherwise caused the board to make the decisions at issue").

The allegations that certain directors could be entitled to "lucrative cash payments" as a result of the merger likewise fail to establish liability for Attachmate because plaintiffs do not allege that Attachmate induced or agreed to these payments in exchange for the Directors' support of the merger, or that Attachmate otherwise exploited a conflict of interest on the Board. Morgan v. Cash, 2010 WL 2803746, at *5 (Del. Ch. July 16, 2010)(rejecting aiding and abetting claim where plaintiff pled no facts plausibly indicating that third party "induc[ed]" or "pressed" for bonuses for the target company's managers in exchange for their support of the merger deal).

Plaintiffs also allege that the directors breached their fiduciary duties by agreeing to the "No Shop," "Matching Rights," and "Termination Fee" provisions, the terms of which benefitted Attachmate.  Even if the presence of these provisions in the merger agreement were to constitute a breach by the Novell Directors, plaintiffs fail to establish aiding and abetting liability by Attachmate in the absence of allegations from which I could reasonably infer that Attachmate colluded with members of the Board to secure these provisions. Morgan, 2010 WL 2803746, at *8 (citing the "long-standing rule that arm's-length bargaining is privileged and does not, absent actual collusion and facilitation of fiduciary wrongdoing, constitute aiding and abetting")(emphasis added).

### 2.  The Attachmate/Elliott Financing Arrangement

Plaintiffs do not allege how, by engaging in a financing arrangement with Elliott, Attachmate aided and abetted a breach of fiduciary duty by the Novell Directors. Save for plaintiffs' conclusory allegations that the Novell Board "permitted" and "allowed" Elliott to gain a financial benefit, there are no allegations that the financing arrangement between Elliott and Attachmate was anything other than an independent deal between two separate companies. That the deal ultimately facilitated the financing of the acquisition of Novell by Attachmate does not demonstrate that Novell was responsible for or, in any way, involved in the deal. Since plaintiffs fail to offer factual allegations sufficient to allege a "breach" by the Novell Directors in connection with the financing arrangement between Elliott and Attachmate, there can be no aiding and abetting by Attachmate in this regard. In re Transkaryotic Therapies, Inc., 954 A.2d 346, 371 (Del. Ch. 2008) (one cannot aid or abet a breach that does not exist.)[7]

## B. The 1934 Act Claims Against Attachmate

### 1. Section 14(a) and Rule 14a-9(a)

Plaintiffs premise their 1934 Act claims against Attachmate on two theories: "primary" liability under § 14(a)[8] and Rule 14a-9(a)[9]—for material misstatements and/or

---

[7] I determine only that the allegations in the Consolidated Complaint regarding the Elliott/Attachmate financing deal are insufficient to establish breach by the Novell Directors. Plaintiffs muster other allegations—separate from those regarding the Elliott/Attachmate deal—in support of their claims for breach of fiduciary duty against the Novell Directors. I make no ruling as to the sufficiency of those allegations.

[8] Section 14(a) of the Exchange Act, 15 U.S.C. § 78n(a), makes it unlawful to "solicit. . . any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title," in "contravention of such rules and regulations as the [Securities and Exchange] Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors[.]"

[9] Rule 14a-9(a), 17 C.F.R. § 240.14a-9(a), provides: "No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which

omits in a proxy—and "control person" liability under § 20(a),[10] under which any

person who controls a party responsible for a securities violation is jointly and severally

liable with the primary violator.  The first theory founders on plaintiffs' concession at

oral argument that their theory of liability against Attachmate for material misstatements

and/or omissions in Novell's proxy materials rests on Attachmate's alleged "ability to

control" Novell after the two entered into the merger agreement.  In other words,

Attachmate's liability under § 14(a) and Rule 14a-9(a) hinges on it having control over

Novell's proxy materials.  Since plaintiffs' theory of liability against Attachmate is wholly

derivative, Attachmate cannot be held liable for a primary violation of § 14(a) or Rule

14a-9(a) without plaintiffs adequately pleading control of Novell by Attachmate.

## 2.  Section 20(a)

Under § 20(a), plaintiffs must show: (1) an underlying violation of the securities

laws by the controlled entity; and, (2) control of the primary violator by the defendant.  In

re Stone & Webster, Inc. Securities Litigation, 414 F.3d 187, 194 (1st Cir. 2005).  See

also In re Boston Scientific Corp. Securities Litigation, 708 F.Supp.2d 110, 129

(D.Mass. 2010) ("[Th]e plain terms of section 20(a) indicate that it only creates liability

derivative of an underlying securities violation.").

Paragraph 97 of the Consolidated Complaint alleges that Attachmate "had direct

supervisory control over composition of the Proxy and the information disclosed

---

omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading."

[10] Section 20(a), 15 U.S.C. § 78t(a), provides, in relevant part: "Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable . . . ."

therein, as well as the information that was omitted and/or misrepresented in the Proxy." Plaintiffs argue that they are "not required to plead more to state a section 20(a) claim," and cite to Maher v. Durango Metals, Inc., 144 F.3d 1302, 1306 n.8 (10th Cir. 1998), which states that "courts generally agree that the plaintiff need only show the power to control the transaction underlying the alleged securities violation and not the exercise of that power." (emphasis added). Plaintiffs misstate the standard for establishing "control" as a matter of law in the First Circuit, which requires that the alleged controlling person actually exercise control over the violator. Aldridge v. A.T. Cross Corp., 284 F.3d 72, 85 (1st Cir. 2002)("To meet the control element, the alleged controlling person must not only have the general power to control the company, but must also actually exercise control over the company.")(citing Sheinkopf v. Stone, 927 F.2d 1259, 1270 (1st Cir.1991)("For [the defendant] to be liable ... there must be 'significantly probative' evidence that the [defendant] exercised, directly or indirectly, meaningful hegemony over the ... venture ....")(internal citation omitted)).  In Aldridge, even certain defendants' status as controlling shareholders was not enough to establish § 20(a) liability "in the absence of some indicia of the exercise of control over the entity primarily liable" or facts which indicated they were "actively participating in the decisionmaking processes of the corporation. . . ." 284 F.3d at 85 (emphasis in original).

Maher does not help plaintiffs.  Even by the Tenth Circuit's standard, plaintiffs fail to plead the "control" element.  The Maher court held that plaintiff failed to plead facts sufficient to establish control when he did not allege that "COM possessed even

the power to control Durango, but rather that COM, by virtue of its agreement with Durango, possessed only the ability to acquire that power." 144 F.3d at 1305-06 (emphasis in original). Construed liberally, the facts plead in the Consolidated Complaint at most suggest that Attachmate had the ability to acquire the power to control Novell.

Furthermore, the allegations in paragraph 97 are conclusory and insufficient to meet Iqbal's pleading standard. Paragraphs 95 and 98 of the Consolidated Complaint – which allege that Attachmate had access to copies of the proxy, the ability to prevent issuance of or correct allegedly misleading statements, and input in the proxy's descriptions of information reviewed and considered by the Novell Directors – are likewise too bare to pass muster. See Penalbert-Rosa v. Fortuno-Burset, 631 F.3d 592, 595 (1st Cir. 2011); S.E.C. v. Tambone, 597 F.3d 436, 442 (1st Cir. 2010).

Plaintiffs simply fail to plead facts suggesting that Attachmate actually exercised control over Novell's proxy materials or actively participated in Novell's decisionmaking process. The motion to dismiss the 1934 Act claims against Attachmate is allowed.

## III. Novel Directors' Motion to Stay

I grant Attachmate's motion to dismiss as to all counts because the Consolidated Complaint is clearly bereft of allegations sufficient to state a claim against it. Plaintiffs claims against the Novell Directors are not as obviously deficient; thus, I deny their motion to dismiss and consider their alternative motion to stay.

The Novell Directors have moved for a stay under the abstention doctrine set forth in Colorado River Water Conservation Dist. v. United States, 424 U.S. 800 (1976),

15

and its progeny. Docket # 58. The <u>Colorado River</u> doctrine permits federal courts to abstain in certain "exceptional circumstances" from hearing cases when a first-filed, parallel state court action is pending. 424 U.S. at 818. The doctrine is rooted in "considerations of '[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." <u>Id.</u> at 817 (internal citations omitted).

If I determine that the federal and state court actions are "parallel," I must then weigh several factors in deciding whether exceptional circumstances are met. <u>In re:</u> <u>Brooks Automation, Inc. Derivative Litigation</u>, No. 06-10943, slip op. at 2-3 (D.Mass. Dec. 22, 2006). They are: (1) whether either court has assumed jurisdiction over a <u>res</u>; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether state or federal law controls; and, (6) the adequacy of the state forum to protect the parties' rights. <u>Villa Marina Yacht Sales, Inc. v. Hatteras Yachts</u>, 947 F.2d 529, 532 (1st Cir. 1991)["<u>Villa Marina I</u>"]. The First Circuit has also considered a seventh factor: the "vexatious or reactive nature of the federal lawsuit." <u>Elmendorf Grafica, Inc. v. D.S.</u> <u>America (East), Inc.</u>, 48 F.3d 46, 50 (1995). "No one factor is necessarily determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counseling against that exercise is required." <u>Colorado River</u>, 424 U.S. at 818-19.

**A. Parallel Proceedings**

For the federal and state actions to be parallel, the case law does not require absolute identity of the parties and issues, only substantial similarity. <u>Brooks Automation</u>, slip op. at 3 (citing <u>Interstate Material Corp. v. City of Chicago</u>, 847 F.2d 1285, 1288 (7th Cir. 1988)). <u>See also</u> <u>Villa Marina I</u>, 947 F.2d at 533.

Plaintiffs argue that, in order for the state and federal actions to be parallel, the former must dispose of all claims brought in the latter. I have previously considered and rejected this argument. <u>Brooks Automation</u>, slip op. at 4 (declining to follow <u>In re Comverse Tech.</u>, No. 06-CV-1849, 2006 WL 3193709 (E.D.N.Y. Nov. 2, 2006)).

Plaintiffs also contend that because this case involves claims over which the federal courts have exclusive jurisdiction (i.e., the 1934 Act claims), the two cases cannot be "parallel" as a matter of law and a stay is not appropriate. Although some jurisdictions have held as much,[11] the First Circuit has not, and this court has, in the past, reached the opposite conclusion. <u>See</u> <u>Brooks Automation</u>, slip op. at 7 (citing <u>Lorentzen v. Levelor Corp.</u>, 754 F.Supp. 987, 992-94 (S.D.N.Y. 1990), and <u>Int'l Jensen, Inc. v. Emerson Radio Corp.</u>, 1996 WL 494273 (N.D. Ill. 1996)). <u>See also</u> <u>Will v. Calvert Fire Insurance Co.</u>, 437 U.S. 655, 664 (1978). All defendants in this action are defendants in the Delaware action; named plaintiffs are members of the putative class of plaintiffs in the Delaware action. The claims in both actions are predicated on the same underlying facts; namely, allegations that the Novell Directors failed to maximize shareholder value in the merger with Attachmate, and made material misstatements

---

[11] <u>See, e.g.</u>, <u>Andrea Theatres, Inc. v. Theatre Confections, Inc.</u>, 787 F.2d 59, 62 (2d Cir. 1986); <u>Medema v. Medema Builders, Inc.</u>, 854 F.2d 210, 213-14 (7th Cir. 1988); <u>Minucci v. Agrama</u>, 868 F.2d 1113, 1115 (9th Cir. 1989).

and/or omissions in proxy statements issued by Novell preceding the merger. As discussed below, the issues to be adjudicated are substantially the same, if not identical. I therefore rule that the federal and state actions are parallel and proceed to weigh the Colorado River factors.

## B. The Colorado River Factors

The first and seventh factors are neutral; there is no res at issue, and the record discloses no evidence that this suit is "vexatious or contrived." See Jimenez v. Rodriguez-Pagan, 597 F.3d 18, 28 (1st Cir. 2010)(discussing "neutral" factors). Although federal law governs two of the three claims here, the weight of the fifth factor (whether state or federal law controls) is mitigated by the potential preclusive effect of a state court decision adverse to plaintiffs, as discussed below. As for the second factor, I am not persuaded that Massachusetts is a "decidedly more convenient" forum than Delaware. Docket # 55 at 9. While Novell is located in Massachusetts and two of the Novell Directors reside here, none of the plaintiffs do and Attachmate is based in Washington. The remaining factors weigh decisively in favor of abstention.

### 1. Piecemeal Adjudication and Protection of Parties' Rights

Most compelling is that a stay will avoid needless and wasteful piecemeal litigation while still protecting the parties' rights. Count I—for common law breach of fiduciary duty—rests entirely on interpretation and application of Delaware state law in which Delaware courts have an important interest and expertise and on which the potential for harmful and inconsistent rulings exists.

Plaintiffs argue, however, that a stay will not avoid piecemeal adjudication

because the 1934 Act claims must be adjudicated in federal court regardless of the outcome of the Delaware action. They insist that the Delaware action can never fully dispose of the 1934 Act claims because federal and state law regarding disclosure in connection with proxy solicitations are not "identical."

Their argument misses the point. Although federal disclosure law may not parallel that under Delaware common law in every respect, both require proof that an alleged misstatement or omission was "material." Crucially, "the Delaware courts recognize the same standard of 'materiality' as the Supreme Court recognized for § 14(a) claims in TSC Industries Inc. v. Northway, Inc., 426 U.S. 438, 445-49 (1976)." Int'l Jensen, 1996 WL 494273, at *4 (N.D. Ill. 1996)(citing Bershad v. Curtiss-Wright Corp., 535 A.2d 840, 846 (Del. 1987), Rosenblatt v. Getty Oil Co., 493 A.2d 929, 944 (Del. 1985), and Mills v. Electric Auto-Lite Co., 396 U.S. 375, 383-85 (1970)). Where both this court and the Delaware court must determine the "materiality" of any alleged misrepresentation or omission on the same set of facts using the exact same standard, the risk of piecemeal adjudication is real. As in Int'l Jensen, "the issues involved in these cases, even though they stem from different sources of law, are substantially the same. It is therefore unnecessary for both courts to act upon these claims." 1996 WL 494273, at *6.

Furthermore, a decision by the Delaware court could provide a predicate for collateral estoppel of plaintiffs' 1934 Act claims. "[A] state court judgment may in some circumstances have preclusive effect in a subsequent action within the exclusive jurisdiction of the federal courts." Marrese v. American Academy of Orthopaedic

Surgeons, 470 U.S. 373, 380 (1985). See also Becher v. Contoure Laboratories, Inc.,
279 U.S. 388, 391-92 (1929); Brown v. Felsen, 442 U.S. 127, 139, n. 10 (1979); Clough
v. Rush, 959 F.2d 182, 187 (10th Cir. 1992).  As the Supreme Court noted in
Matsushita Elec. Indus. Co., Ltd. v. Epstein, 516 U.S. 367, 383-84 (1996): "Congress
plainly contemplated the possibility of dual litigation in state and federal courts relating
to securities transactions. . . . [and] said nothing to modify the background rule that
where a state-court judgment precedes that of a federal court, the federal court must
give full faith and credit to the state court judgment."

There is no reason to believe that the Delaware Chancery Court will not fairly and
completely adjudicate the facts underlying the plaintiffs' disclosure claims; notions of
comity militate otherwise.  While it is impossible to predict at this juncture the exact
preclusive effect in this litigation of a judgment reached by the Chancery Court, any
decision adverse to the plaintiff could moot or otherwise expedite disposition of plaintiffs'
federal claims, while still protecting the parties' rights.  See Int'l Jensen, 1996 WL 494273,
at *4.  Wise judicial administration commands a stay. See Klein v. Walston & Co., 432 F.2d
936, 937 (2d Cir. 1970); Rogers v. Desiderio, 58 F.3d 299, 302 (7th Cir. 1995).

### 2.  Order in Which Forums Obtained Jurisdiction

Given the progress of the Delaware action, the fourth factor – the order in which
the forums obtained jurisdiction – also weighs in favor of a stay.  This factor "should not
be measured exclusively by which complaint was filed first but rather in terms of how
much progress has been made in the two actions." Currie v. Group Insurance Com'n,
290 F.3d 1, 10 (1st Cir. 2002)(citing Moses H. Cone Mem'l Hosp. v. Mercury Constr.

<u>Corp.</u>, 460 U.S.1, 21 (1983)). On December 27, 2010, plaintiffs in the Delaware action filed a motion for expedited proceedings including expedited discovery and a request for injunctive relief. The Chancery Court issued a scheduling order on January 6, 2011. The parties engaged in expected discovery, which resulted in the production of over 93,000 documents (1.5 million pages), including over 63,000 documents (over 900,000 pages) from Attachmate alone. The Delaware plaintiffs also deposed Novell Director (and defendant) Judith Hamilton on January 10, 2011. They ultimately withdrew their request for a preliminary injunction due to Novell's agreement to make additional disclosures in its proxy materials.

Plaintiffs acknowledge that discovery has been produced in the Delaware action, but argue that such discovery is "easily transferable" to this action. Docket # 55 at 10. The fact that discovery can be transferred is not enough to negate the weight of this factor. <u>Villa Marina I</u>, 947 F.2d at 535. This factor favors abstention.

While I am mindful of the "heavy presumption favoring the exercise of jurisdiction," <u>Villa Marina Yacht Sales, Inc. v. Hatteras Yachts</u>, 915 F.2d 7, 13 (1st Cir. 1990), exceptional circumstances are present in this case and a stay of all claims against defendant Novell Directors is appropriate.

## IV. Conclusion

Attachmate's Motion to Dismiss (Docket # 51) is ALLOWED. The Motion to Stay Proceedings (Docket # 49) is ALLOWED as to Novell Directors and DENIED AS MOOT as to Attachmate. The Novell Directors' Motion to Dismiss (Docket # 46) is DENIED without prejudice. Each defendant's Motion for Leave to File a Reply (Docket

## 56, 57) is ALLOWED. The case is stayed pending further order of this court.

Counsel shall file a status report on or before July 31, 2012.


_____February 10, 2012_____         _____/s/Rya W. Zobel_____

       DATE                             RYA W. ZOBEL
                                        UNITED STATES DISTRICT JUDGE